UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAMEEKA ACUFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: |
| | ) |
| CAREENROLL LLC d/b/a | ) |
| VISION FINANCIAL SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff, Shameeka Acuff ("Acuff"), brings this action against Defendant, Careenroll LLC d/b/a Vision Financial Services, Inc. ("Defendant"), for unlawfully violating her rights as protected by the Family and Medical Leave Act ("FMLA").

## PARTIES

2. Acuff has resided within the Southern District of Indiana at all relevant times.

3. Defendant is a company that has conducted business within the Southern District of Indiana at all relevant times.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

5. Acuff was an "employee" within the meaning of 29 U.S.C. § 2611(3).

6. Defendant is an "employer" within the meaning of 29 U.S.C. § 2611(4).

7. Between January 1, 2025, and January 2, 2026, Acuff was an "eligible employee" as that term is defined by the FMLA.

8. Acuff's father had a "serious health condition," as that term is defined by the FMLA.

9. Between January 1, 2025, and January 2, 2026, Defendant employed 50 or more employees within a 75-mile radius of the office to which Plaintiff was assigned.

10. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

11. Defendant hired Acuff to be a Call Center Supervisor in or about May 2023.

12. Acuff's work performance met or exceeded Defendant's legitimate expectations at all relevant times.

13. As of May 1, 2025, Acuff was the Call Center Supervisor for Anthem projects at Defendant.

14. In or about May 2025, Acuff applied for intermittent FMLA to care for her father, who had a serious health condition.

15. Defendant approved Acuff's request for intermittent FMLA leave in or about May 2025.

16. Defendant approved Acuff for up to 1-2 days per week of FMLA.

17. Acuff took multiple days of FMLA leave after the approval.

18. Defendant transferred Acuff from the Anthem area to its Enroll Plus area in or about June 2025.

19. Before the transfer, Acuff supervised between 8 and 10 employees.

20. After the transfer, Acuff initially did not supervise any employees.

21. Months later, Acuff supervised approximately two employees.

22. On or about November 3, 2025, Acuff requested continuous FMLA leave for approximately 6-8 weeks.

23. On or about November 4, 2025, Acuff modified her FMLA leave request from a block

leave to intermittent leave with estimated parameters of up to an four days per week.

24. On or about November 13, 2025, Defendant denied her intermittent FMLA request because of "business continuity needs."

25. Instead, Defendant approved Acuff for continuous leave for approximately 6-8 weeks.

26. On or about November 14, 2025, Acuff questioned and objected to Director of Human Resources Joesette Kessling ("Kessling") about Defendant's denial of her intermittent FMLA request.

27. Kessling told Acuff that her department had too much business, that she managed a team, and that Defendant could not handle her intermittent absences as a supervisor.

28. Kessling advised Acuff that she could continue with her 1-2 days per week of intermittent FMLA leave or take continuous FMLA leave.

29. Left with no choice and under unreasonable pressure, Acuff informed Kessling that she had opted to continue with her 1-2 days per week of intermittent FMLA leave.

30. In or about November, Supervisor Lauren Sharabi ("Sharabi") met with Acuff and issued a performance review to her.

31. During the review meeting, Sharabi informed Acuff that she needed to rearrange her work schedule and assignments because of Acuff's application for and use of intermittent leave.

32. On or about November 18, 2025, Acuff spoke with Sharabi about scheduling the Indiana Navigator Exam, which was required for her position.

33. Sharabi told Acuff that she did not want to schedule and pay for the exam because Acuff had been approved for intermittent FMLA leave and that it would be a waste of Defendant's money.

34. Acuff asked Sharabi how much the exam cost.

35. Sharabi informed Acuff that the exam cost $50.00.

36. Sharabi commenced treating Acuff in a negative manner as compared with her coworkers after Defendant had approved her for intermittent FMLA leave.

37. Acuff submitted a written complaint about Sharabi to Kessling and Director of Operations Bobbie Archie on or about December 19, 2025.

38. Acuff submitted a Microsoft Teams meeting request to Archie and reminded her about her December 19, 2025 complaint.

39. Archie responded that she would review the complaint.

40. Defendant fired Acuff on or about January 2, 2026.

41. Archie told Acuff that her work performance played no role in the termination.

42. Archie and Kessling did not speak or otherwise communicate with Acuff about her December 19, 2025 complaint.

43. Defendant did not offer to transfer or reassign Acuff to another position at Defendant in or about November 2025.

44. Defendant did not offer to transfer or reassign Acuff to another position at Defendant in or about December 2025.

45. Defendant did not offer to transfer or reassign Acuff to another position at Defendant in or about January 2026.

46. Defendant has accorded more favorable treatment to similarly-situated employees outside of Acuff's protected classes.

47. Defendant issued no discipline to Acuff before her discharge.

48. Acuff had no understanding that her employment was in jeopardy when Defendant

fired her.

49. Defendant took adverse employment actions against Acuff because of her statutorily-protected conduct (e.g., asking for intermittent FMLA leave, taking intermittent FMLA leave, and opposing FMLA discrimination and/or interference).

50. Any reason proffered by Defendant for the adverse actions it took against Acuff is pretextual.

51. Acuff has suffered injury as a result of Defendant's unlawful actions.

## VIOLATIONS OF THE FMLA

52. Acuff hereby incorporates paragraphs 1-51 of her Complaint.

53. Acuff requested intermittent FMLA leave.

54. Defendant approved intermittent FMLA leave.

55. Defendant took adverse employment actions against Acuff because of her requests for and use of FMLA leave.

56. Defendant interfered with Acuff's substantive FMLA rights.

57. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Acuff's FMLA rights.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Shameeka Acuff, by counsel, respectfully requests that this Court find for her and order that:

1. Defendant pay lost wages and benefits to Acuff;

2. Defendant reinstate Acuff to the same position, with the requisite pay, seniority, and benefits, or pay front pay and benefits to her in lieu of reinstatement;

3. Defendant pay liquidated damages to Acuff;

4. Defendant pay pre- and post-judgment interest to Acuff;

5. Defendant pay Acuff's attorneys' fees and costs incurred in litigating this action; and

6. Defendant pay to Acuff any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

        Respectfully submitted,

        /s/ Bradley L. Wilson
        Bradley L. Wilson, Attorney No. 21154-49
        Shannon L. Melton, Attorney No. 29380-49

        Attorneys for Plaintiff
        Shameeka Acuff

WILSON MELTON, LLC
5226 South East Street, Suite A-5
Indianapolis, Indiana 46227
Telephone:   (317)802-7181
Email:       bwilson@wilsonmelton.com
            smelton@wilsonmelton.com

## DEMAND FOR JURY TRIAL

Plaintiff, Shameeka Acuff, by counsel, respectfully requests a jury trial for all issues deemed triable.

        Respectfully submitted,

        /s/ Bradley L. Wilson
        Bradley L. Wilson, Attorney No. 21154-49

        Attorneys for Plaintiff
        Shameeka Acuff